Adam J. Soibelman 150106
ASoibelman@R2LG.com
Robin M. McConnell 190247
RMcConnell@R2LG.com
Adam M. Satnick 302326
ASatnick@R2LG.com
R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Tel:   818.610.3222
Fax:   818.610.3322

Attorneys for Plaintiff,
JULIE MARSHALL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JULIE MARSHALL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PLATINUM GLOBAL ADVISORS, LLC, A California Limited Liability Company; JON PAUL JAVELLANA, an individual; KENNETH RO, an individual; INFINITY CAPITAL GROUP, LLC, A Delaware Limited Liability Company; MARQUEE PRODUCTIONS, LLC, a California Limited Liability Company; NICHOLAS LONGANO, an individual; and DOES 1 through 50, inclusive<br><br>Defendants. | Case No.: 2:16-cv-00672<br><br>**COMPLAINT OF PLAINTIFF JULIE MARSHALL FOR:**<br><br>1. **Violation of Rule 10b-5 of the Securities Exchange Act of 1934**<br>2. **Violation of the Investment Advisers Act of 1940**<br>3. **Violation of California Corporations Code §§ 25401 and 25501**<br>4. **Fraud**<br>5. **Breach of Fiduciary Duty**<br>6. **Professional Negligence**<br>7. **Negligent Misrepresentation**<br>8. **Violation of Business and Professions Code § 17200**<br>9. **Breach of Contract/Promissory Notes**<br>10. **Breach of the Covenant of Good Faith and Fair Dealing**<br>11. **Financial Elder Abuse**<br><br>**DEMAND FOR JURY TRIAL** |

<u>R2 LAW GROUP, LLP</u>
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

## INTRODUCTION

1.     Julie Marshall ("Ms. Marshall" or "Plaintiff") files this action to recover the devastating loss of $400,000.00, her life savings, which she entrusted to

investment advisers, Jon Paul Javellana ("Javellana") and Kenneth Ro ("Ro"), the principals of the investment advisor firm, Platinum Global Advisors, LLC ("PGA"). Ms. Marshall is 70 years old, single, never married, and has no children. When Javellana and Ro persuaded Ms. Marshall to entrust her only savings to them, she was 65 years old and had never invested before. She told Javellana and Ro to make safe investments that would be suitable for her. She also explained to them that the $400,000.00 was all the savings she had and she was close to retirement so she needed to preserve her money in safe options. Javellana and Ro assured Ms. Marshall that they would make safe investments suitable for a woman approaching retirement who had no safety net or other assets.

2. Despite these representations, Javellana and Ro, through fraudulent and deceitful statements, conduct, and egregious omissions, made extremely risky, reckless, and ill-conceived investments. They failed to follow the most basic principles of investing to protect Ms. Marshall's money. They also charged Ms. Marshall an excessively high management fee of 2%, and it is believed that they received additional payments and compensation from the investments made of Ms. Marshall's behalf, all of which breached their fiduciary duties. Javellana and Ro further breached their fiduciary duties by placing Ms. Marshall into inappropriate investments that were very risky, were not liquid, and were placed with untested and unregulated companies, i.e., private companies with no market for their securities, and of course, there was no requirement that the companies abide by SEC rules and regulations.

3. Javellana and Ro used Ms. Marshall's money to purchase $130,000.00 worth of securities from Marquee Productions, LLC ("Marquee"), and gave $270,000.00 in the form of an uncollateralized and uninsured note to Infinity Capital Group, LLC ("Infinity"). By mid-2015, these extremely risky securities accounted for 72.3% of Ms. Marshall's portfolio investments. A safer money-market fund investment accounted for just 2.5% of Ms. Marshall's portfolio investments. (A true

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

and correct copy of Ms. Marshall's April 2015 portfolio statement reflecting these numbers is attached as Exhibit A).

4. Marquee was a self-proclaimed first-of -its-kind, "online, multi-device platform" developer. The $130,000.00 invested in Marquee is now gone with no one to account for it. Infinity is a self-described specialty financing company loaning to people and businesses who find it "difficult or impossible to qualify for standard financing…." The $270,000.00 was loaned to Infinity in exchange for an unsecured note which is now over-due.

5. Javellana and Ro made representations and gave assurances to Ms. Marshall which were designed to get her to invest her money with them. They also failed to provide her with necessary and relevant information about the investments, omitting material information that, had she known, would have prevented her from investing. Javellana's and Ro's statements, conduct, and omissions were false, misleading, and predatory in nature. Ms. Marshall had sustained significant financial losses, in excess of $400,000.00 - the funds she intended to live on for the remainder of her life.

6. Ms. Marshall brings federal claims pursuant to (1) Rule 10b-5 of the Securities Exchange Act of 1934 (17 C.F.R. 240.10b-5), and (2) the Investment Advisers Act of 1940 (15 U.S.C. § 80b-6).

7. Ms. Marshall also brings several related state claims pursuant to (3) *California Corporations Code* §§ 25401 and 25501, alleging state securities fraud; (4) actual fraud/deceit pursuant to *California Civil Code* § 1572; (5) breach of fiduciary duty; (6) professional negligence; (7) negligent misrepresentation; (8) violation of *Business and Professions Code* § 17200; (9) breach of contract/promissory notes; and (10) and breach of the covenant of good faith and fair dealing.

///

///

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this lawsuit under § 27(a) of the Securities Exchange Act of 1934, § 214(a) of the Investment Advisers Act of 1940. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Ms. Marshall resides in the Central District of California. All Defendants do or did business in this district, and the acts giving rise to the violations of law complained of herein occurred in this district, such as the fraudulent and misleading statements, conduct, and omissions, purchase and sale of securities, and exchange of money.

## PARTIES

10. Ms. Marshall is 70 years old, retired, and lives in Santa Monica, California. She is not married and has no immediate family or children. Ms. Marshall is currently living off her pension and social security. Ms. Marshall has no knowledge of or experience with investing, securities, notes, warrants, or the stock market. She was entirely new to investing when she met Javellana and Ro.

11. Defendant Platinum Global Advisors, LLC, is a California limited liability company and a Registered Investment Adviser with the state of California.[1] PGA represents that it is competent to provide clients with "investment advice, asset allocation, portfolio construction, and corporate advisory."[2] It further represents:

> "We take a holistic approach to our clients by striving to intimately understand their particular situation. We review liquidity requirements, cash flow needs, contingent liabilities and current asset allocation … We then perform an extensive analysis of a client's financial circumstance, income requirements, risk tolerance, return expectations, and long-term objectives and then develop a customized asset allocation and specified approach to execute the strategy.[3]

---

[1] http://www.adviserinfo.sec.gov/IAPD/Content/Search/iapd_landing.aspx?SearchGroup=Firm&FirmKey=157643&BrokerKey=-1

[2] http://www.platglobe.com/page0/page0.html

[3] http://www.platglobe.com/philosophy/philosophy.html

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

12. PGA's principal place of business is located at 433 N. Camden Dr. Suite 6F, Beverly Hills, CA 90210.

13. Ms. Marshall is informed, believes, and thereon alleges, that at all relevant times, Javellana was and is a principal and a registered investment adviser representative for PGA. Javellana claims to have over 20 years of experience in the financial industry and has worked for established financial institutions in the past. He holds himself out as an expert in asset allocation, volatility strategies, derivatives applications and money management algorithm disciplines.[4]

14. Ms. Marshall is informed, believes, and thereon alleges, that at all relevant times Ro was and is a principal and a registered investment adviser representative for PGA. Ro claims to have over 16 years of experience in the financial industry and has worked for established financial institutions in the past. He claims expertise in short-term cash management, structured products, derivatives, hedging strategies and structured finance.[5]

15. Defendant Infinity Capital Group, LLC, is a Delaware limited liability company, a licensed lender, and a Registered Investment Adviser with the state of California.[6] It is a "specialty finance company" engaged in the business of, among other things:

> working "with customers with limited or imperfect credit history who need a car but have found it difficult or impossible to qualify for standard financing … [and] becom[ing] the lien holder" as personal injury cases await settlement.[7]

16. Its principal place of business is located at 21700 Oxnard St. Suite 460, Woodland Hills, CA 91367. Stuart Greenberg ("Greenberg") was and is a principal and a registered investment adviser representative for Infinity. Greenberg purports

---

[4] http://www.platglobe.com/Team/team.html

[5] http://www.platglobe.com/Team/team.html

[6] http://www.adviserinfo.sec.gov/IAPD/Content/Search/iapd_landing.aspx?SearchGroup=Firm&FirmKey=159804&BrokerKey=-1

[7] http://icgcapital.net/#about

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

to have over 3 years of experience in the financial industry and is also a certified public accountant.[8] Ms. Marshall met with Greenberg and informed him that she wanted the money due on the note.

17. Marquee Productions, LLC, is a suspended California limited liability company involved in online, multi-device platform development for the purpose of distributing artistic content.[9] Its principal place of business is located at 143 N. Arnaz Dr. #208, Beverly Hills, CA 90211.

18. Ms. Marshall is informed, believes, and thereon alleges that at all relevant times, Defendant Nicholas Longano ("Longano") was and is a principal for Marquee and had decision-making authority during the time relevant to this lawsuit.

19. The true names and capacities whether individual, corporate or otherwise of defendants DOES 1 through 50, inclusive, are unknown to Ms. Marshall who therefore sues these defendants by such fictitious names. Ms. Marshall will amend this complaint to show their true names and capacities when ascertained. Ms. Marshall is informed, believes, and thereon alleges that defendants DOES 1 through 50, inclusive, are in some manner responsible, liable, and obligated to Ms. Marshall in connection with the events alleged herein.

20. Ms. Marshall is informed, believes, and thereon alleges that at all times mentioned herein, the Defendants and Does 1 through 50, and each of them, were and are the agents, servants, employees, representatives, and/or alter egos of each of the remaining Defendants and/or otherwise were acting in concert with them, aided and abetted, and in doing the things alleged herein, were acting within the scope of their authority as such agents, servants, employees, representatives, alter egos and/or aider and abettor, with the advanced knowledge, acquiescence, or subsequent ratification of each Defendant.

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

---

[8] http://www2.dca.ca.gov/pls/wllpub/WLLQRYNA$LCEV2.QueryView?P_LICENSE_NUMBER=31923&P_LTE_ID=783

[9] http://www.businesswire.com/news/home/20130722006344/en/Introducing-Marquee-World-Generation-Experience-Fully-Interactive

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

21. Ms. Marshall is informed, believes, and thereon alleges that at all times mentioned herein, each of the Defendants Javellana, Ro, and PGA shared a unity of interest by, including but not limited to: failing to contribute capital, issue stock, or otherwise complete formation; inadequate capitalization; use of corporate assets as their own; commingling of corporate funds with personal or business funds; and failure to observe corporate formalities to insulate themselves from liability for, among other things, Ms. Marshall's claims herein. Specifically, said Defendants are the alter ego of each other, in that PGA is not only influenced and governed by Javellana and Ro, but there exists such a unity of interests between them that the individuality and separateness of said Defendants has ceased, and the facts are such that an adherence to the fiction of the separateness of said Defendants has ceased, and adhering to the fiction of the separate existence of each Defendant, would, under the particular circumstances, sanction a fraud or promote injustice.

22. Ms. Marshall is informed, believes, and thereon alleges that at all times mentioned herein, each of the Defendants Longano and Marquee shared a unity of interest by, including but not limited to:  failing to contribute capital, issue stock, or otherwise complete formation; inadequate capitalization; use of corporate assets as their own; commingling of corporate funds with personal or business funds; and failure to observe corporate formalities to insulate themselves from liability for, among other things, Ms. Marshall's claims herein. Specifically, said Defendants are the alter ego of each other, and Marquee is not only influenced and governed by Longano, but there exists such a unity of interests between them that the individuality and separateness of said Defendants has ceased, and the facts are such that an adherence to the fiction of the separateness of said Defendants has ceased, and adhering to the fiction of the separate existence of each Defendant, would, under the particular circumstances, sanction a fraud or promote injustice.

## FACTUAL ALLEGATIONS

23. Ms. Marshall is an unsophisticated, 70-year-old woman. She has never

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

been married, has no children, and no immediate family. Ms. Marshall has some college education consisting of the standard general education curriculum. She has no knowledge of investing or securities.

24. Ms. Marshall worked for UCLA in administration for 38 years and recently retired. Her current income consists of the pension she earned and her social security checks.

25. In 2003, Ms. Marshall sold her late mother's house for $480,000.00. She placed that money into a savings account where it safely resided, accumulating modest interest, until 2011. Having no investment experience, Ms. Marshall asked friends and colleagues about how to and whether she should invest the $480,000.00.

26. In 2011, a colleague at UCLA told Ms. Marshall about PGA, Javellana, and Ro. Based on her colleague's recommendation, Ms. Marshall decided to set up a meeting with PGA.

27. In or about September 2011, Javellana and Ro met with Ms. Marshall. Javellana and Ro insisted that their initial meeting be held in a restaurant as opposed to their office. For PGA, this was a consistent theme. Ms. Marshall never stepped foot in PGA's office as Javellana and Ro held every surreptitious meeting in different restaurants.

28. During the initial meeting, Javellana and Ro gained Ms. Marshall's trust by talking about their families and their investment strategies. Ms. Marshall told Javellana and Ro that that they must be wise with her money because it was all the savings she had. She told them she needed safe investments that were suitable for an older woman such as herself, and most importantly she needed her principal investment preserved as it was the only savings she had to retire on. Ms. Marshall was not looking for risky or high yield investments.

29. Javellana and Ro hold themselves out to the public, and to Ms. Marshall, as investment advisers who "take a holistic approach to our clients by

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

striving to intimately understand their particular situation."[10] They expressed, in no uncertain terms, that safe investments would not be a problem. Javellana and Ro indicated that they would invest in a conservative, diversified money-market fund.

30. Javellana and Ro made numerous omissions of material information that would have prevented Ms. Marshall from getting involved with PGA, including, but not limited to the follows;

➤ Javellana and Ro had been involved with significant disputes with past clients. On two separate occasions Javellana has been subject to Financial Industry Regulatory Authority ("FINRA") dispute resolution process involving allegations of misrepresentation. (A true and correct copy of the FINRA BrokerCheck Report is attached as Exhibit B).

➤ On a third occasion, in 2010, Javellana and Ro were held jointly and severally liable in the amount $180,000.00 for making unsuitable investments and over concentrating assets. (A true and correct copy of the Arbitration Award is attached as Exhibit C – see page 9 for relevant ruling).

31. Without disclosing their past issues, and without informing Ms. Marshall of their true intentions for her investments, on or about September 2011, PGA began acting as Ms. Marshall's advisors. An account was opened at Charles Schwab for Ms. Marshall. The Schwab account listed PGA as Ms. Marshall's independent investment manager/advisor and gave them access to her funds to invest, transfer, and pay their own advisor fees.

32. Ms. Marshall's savings were transferred into the Charles Schwab account. PGA, then withdrew funds directly from the Charles Schwab account for the investment they made for Ms. Marshall.

33. At the end of the day, PGA ultimately managed all of Ms. Marshall's assets, and specifically invested over $400,000.00 into two companies, Infinity and

---

[10] http://www.platglobe.com/philosophy/philosophy.html

9

Marquee.

34. PGA provided no written information to Ms. Marshall about these investments before they were made, nor did they communicate with or keep Ms. Marshall informed about her "investments" after they were made. For about a year and half after the September 7, 2011, investment, Ms. Marshall only received sporadic phone calls and her Charles Schwab statements.

35. Ms. Marshall recalls a few phone calls where Javellana or Ro told Ms. Marshall that they had a "stock they thought would be good for her," and asked for permission to transfer money for those investments. Trusting them to make the right decision, Ms. Marshall always followed their recommendations. Ms. Marshall never received paperwork regarding the nature of these risky investments made for her.

36. Ms. Marshall received statements from Charles Schwab; however, those statements reflected those monies held in cash, gold, and a Schwab Money Market account.

37. Ms. Marshall periodically received Portfolio Review statements from PGA. These statements were generated by PGA and were deceptive at best as they continued to show that Ms. Marshall's account and securities were gaining in value or holding steady despite the reality that some of the investments had been lost in full.

I. **The Marquee Investment**

38. In or about the summer of 2013, PGA called Ms. Marshall to recommend certain securities that "look[ed] safe" and "had been doing very well." They asked for Ms. Marshall's permission to invest. Based on PGA's representations that the investments "look[ed] safe" and were "doing very well," and in light of PGA's commitment to investing her money in accordance with her needs to be conservative and protect her principal, Ms. Marshall felt assured and went along with Javellana's and Ro's recommendations.

39. PGA failed to tell Ms. Marshall that her money would be funneled into

an untested, first-of-its-kind "online, multi-device platform" developer called Marquee Productions, LLC. Marquee had one "product," which was "the first fully interactive entertainment experience giving users a one-stop music destination with access to the best live performances and music discovery from any device."[11] They did not mention that Marquee was a private company with zero track record of success, that her investment would be illiquid, or that this was a highly risky investment that deviated from all of her stated goals and desires.

40. PGA also failed to tell Ms. Marshall that the amount being invested in Marquee was $130,000.00, which constituted 32.5% of the money Ms. Marshall entrusted to PGA's care.

41. Astonishingly, PGA invested Ms. Marshall's money in a private start-up entertainment "experience" company. No reasonable person, let alone "expert" investment adviser, would make such an investment with an unsophisticated retiree's money.

42. Ms. Marshall is informed, believes, and thereon alleges that on or about August 7, 2013, Marquee sold and PGA purchased a mixture of warrants, shares, and a note. PGA did not provide Ms. Marshall with any paperwork regarding this transaction other than a reflection of the $130,000.00 on the PGA Periodic Review statements.

43. On or about July 31, 2015, after two years of little to no communication from PGA, Ms. Marshall, having become concerned about her investements, emailed Javellana and Ro. She requested "a withdrawal of all the money you have invested, ($400,000.00 through Charles Schwab) plus all interest accrued over the past two years." She instructed PGA to send "good funds in the form of a bank check" to her by August 7, 2015. Ms. Marshall also requested "documentation relating to [the Marquee] investment" as she had not received any in the past. PGA

[11] http://www.businesswire.com/news/home/20130722006344/en/Introducing-Marquee-World-Generation-Experience-Fully-Interactive

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

did not respond to Ms. Marshall's email. (A true and correct copy of the July 31, 2015, email is attached as Exhibit D).

44. On or about August 4, 2015, Ms. Marshall printed and sent PGA by certified mail, the July 31, 2015, email. On it was her handwritten note stating that she received no response from PGA, but still expected a response "regarding the closure of my account, as stated above by August 7, 2015. If this is not done, I will take further action." Again, no response was forthcoming from PGA. (See Exhibit D).

45. Ms. Marshall tried to call and get someone from PGA on the phone. She wanted her investments back and wanted answers about her account. Eventually, Javellana and Ro informed her that they had been unable to contact Marquee's CEO Nicholas Longano, and that Marquee "is not actively operating...." Instead of assisting their client, PGA incredulously directed Ms. Marshall to try to contact Longano herself since Longano and Marquee "are the ones with whom you have the note and the warrants/shares." Every phone number they gave Ms. Marshall for Longano was either disconnected or permanently busy.

46. On September 14, 2015, Ms. Marshall emailed PGA explaining her frustration at the lack of communication and help. She pleaded for information about when she could expect her money. She told PGA that if she did not hear from them by September 18, 2015, she would contact the Securities and Exchange Commission. (A true and correct copy of the September 14, 2015, email is attached as Exhibit E).

47. On September 18, 2015, Javellana emailed Ms. Marshall. The only "assurance" PGA could give was that they would "continue to work on finding alternate ways to track down Nicholas Longano" and that they "have been doing everything [they] can do to facilitate" Ms. Marshall's requests. (A true and correct copy of the September 18, 2015, email is attached as Exhibit F).

48. On October 16, 2015, Javellana sent an email to Ms. Marshall

R2 Law Group, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE
SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

reiterating that Marquee "is not actively operating" and that "their management team is still seeking a way to restart." He stated he is "not regularly in contact with the CEO Nicholas Longano." (A true and correct copy of the October 16, 2015, email is attached as Exhibit G).

49. Ms. Marshall replied on the same day stating, "[y]ou're telling me you invested my $130,000.00 in Marquee and that money is gone." There has been no further communication from PGA. (See Exhibit G).

## II. The Infinity Investment

50. Ms. Marshall is informed, believes, and thereon alleges that in or about the summer of 2013, PGA called Ms. Marshall and told her about "a new company that was doing well and would be a good investment." PGA described the company as a micro-loan organization that would loan money out to people and charge high interest rates. PGA recommended this investment to Ms. Marshall.

51. PGA failed to tell Ms. Marshall that Infinity was a "non-prime" lender, lending to individuals who do not qualify for loans and require alternative financing.[12] Moreover, PGA was aware that Infinity was risky and may have issues timely paying investors back, but it withheld this information from Ms. Marshall. (A true and correct copy of the August 5, 2015, email is attached as Exhibit H).

52. On or about August 7, 2013, PGA "invested" $270,000.00 of Ms. Marshall's money with Infinity in the form of an uncollateralized and uninsured promissory note. The note's maturity date was August 7, 2015.

53. This investment constituted 67.5% of Ms. Marshall's assets and the balance of the money Ms. Marshall trusted PGA to wisely invest. (A true and correct copy of the Loan Agreement and Promissory Note is attached as Exhibit I).

54. The material terms of the promissory note were as follows:

    i. Ms. Marshall loaned $270,000.00 to Infinity on August 7, 2013.

    ii. Infinity promised to pay Ms. Marshall $270,000.00, with interest

---

[12] http://icgcapital.net/#about

13

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

at a rate of 12% per annum, on or before August 7, 2015.

iii. Infinity intended to use the proceeds of the loan for "investment in the Fund investment strategies."

iv. Should any party materially breach the agreement, the non-breaching party shall be indemnified by the breaching party for its reasonable attorney's fees and out-of-pocket costs, which may relate to, or were precipitated by, the breach of the agreement, including enforcement costs.

55. From about April 2014 until September 2015, Ms. Marshall received monthly interest payments of $2,700.00, deposited directly into her Charles Schwab account. No further interest payments have been received.

56. On or about July 30, 2015, and again without help from Javellana or Ro, Ms. Marshall went directly to Infinity's CFO, Greenberg, to demand repayment of her funds upon the Note's maturity and to inquire about the status of her $270,000.00.

57. Greenberg sent Ms. Marshall a letter informing her that Infinity had never communicated with her because PGA never provided her contact information. Greenberg indicated that Infinity would not be able to repay the Note on maturity but, nonetheless, he encouraged Ms. Marshall to "reassess" and "explore continuing [their] business relationship." (A true and correct copy of Greenberg's email explaining Infinity's inability to repay on the note is attached hereto as Exhibit J).

58. On July 31, 2015, Ms. Marshall sent a letter to Infinity exercising her rights under the promissory note's Maturity clause, seeking the return of the $270,000.00 principal together with any accrued interest as of August 7, 2015. Ms. Marshall copied PGA on the letter. (A true and correct copy of the July 31, 2015, letter is attached as Exhibit K).

59. On or about August 5, 2015, Greenberg wrote an email and stated that the "check will not be available. We apologize for the inconvenience that this may

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

cause. When your loan was made, we made it clear to your financial advisor that we are not always flush with cash and that we could not guarantee a timely distribution without adequate advanced notice. Upon return to my office next week we will address your request and come up with a plan. [P]lease keep in mind that my staff are not able to assist you regarding this matter." (See Exhibit H).

60. On September 18, 2015, Ro emailed Ms. Marshall with further misrepresentations, stating that Infinity "is currently working to return your capital. He may have been out the last few days due to the Yom Kippur and Rosh Hosannah [sic] holidays. We will contact him again if necessary to find out what his progress is." (See Exhibit F).

61. As a result of each Defendant's predatory, fraudulent, and deceitful actions, Ms. Marshall mistakenly believed that the investments Javellana and Ro placed her in were safe, conservative, and were suitable for her stated goals and position.

**COUNT I**

**Violation of Rule 10b of the Securities Exchange Act of 1934 15 U.S.C. §78j(b) and Rule 10b-5 of the Securities and Exchange Commission 17 C.F.R. Section 240.10b-5**

**Against Defendants PGA, Javellana, and Ro**

62. Ms. Marshall incorporates by reference paragraphs 1 through 61 as though set forth fully herein.

63. In violation of Rule 10b and 10b-5, PGA, Javellana, and Ro, through the use of interstate commerce and/or mail, knowingly or recklessly misrepresented the fraudulent nature of their investment program to Ms. Marshall and (a) have employed devices, schemes, or artifices to defraud, (b) have made untrue statements of a material fact or omitted material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) have engaged in transactions, acts, practices, and courses of business which

15

operated as a fraud or deceit upon Ms. Marshall, the purchaser of the securities.

64. Specifically, PGA, Javellana, and Ro, directly and indirectly, did the following:

> Made untrue and/or misleading statements of material fact including that they would make suitable, safe, and conservative investments;

> Omitted to state material facts related to investments and the fitness of those investments for Ms. Marshall, including that both Marquee and Infinity were good investments, were safe investments, and were investments in companies that were doing very well;

> Made representations and statements with a reckless disregard for the truth and without having reason to believe that the recommendations and placement of Ms. Marshall's monies in high risk securities were suitable in light of her age, financial needs, financial situation, and naïveté about investments;

> Employed devices to defraud Ms. Marshall in connection with the purchase and sale of the Marquee and Infinity securities, including providing misleading portfolio review statements.

65. By reason of the foregoing, Defendants PGA, Javellana, and Ro have violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

66. Ms. Marshall has suffered damages in an amount in excess of $400,000.00.

## COUNT II

**Violation of the Investment Advisers Act of 1940, 15 U.S.C. §80b-1 et seq.**

**Against PGA, Javellana, and Ro**

67. Ms. Marshall incorporates by reference paragraphs 1 through 66 as though set forth fully herein.

68. This Count is based upon Section 215 of the Investment Advisers Act,

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

15 U.S.C. §80b-1 et seq.

69. PGA, Javellana, and Ro served as "investment advisers" for Ms. Marshall pursuant to the Investment Advisers Act and engaged in the business of advising Ms. Marshall as to the value of investments and the advisability of investments in exchange for compensation.

70. PGA, Javellana, and Ro, by engaging in the conduct set forth above, directly and indirectly, by use of the mails and other means and instrumentalities of interstate commerce;

> With knowledge and actual intent, employed devices, schemes and artifices to defraud Ms. Marshall;

> Engaged in transactions, practices, or courses of business which operated as fraud and/or deceit upon Ms. Marshall;

> Engaged in transactions, acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

71. As fiduciaries and advisors under the Investment Advisers Act, PGA, Javellana and Ro's conduct described above violated the Investment Adviser's Act and violated their implied duty of care as fiduciaries.

72. As a result, Ms. Marshall is entitled to rescind all investment advisory contracts and to restitution of any consideration paid under any and all investment advisory contracts with Javellana, Ro, and/or PGA, or otherwise.

73. Further, Ms. Marshall's purchases, investments, and/or acquisitions of securities from PGA, Javellana, and Ro are void.

## COUNT III

### Violations of California Corporations Code §§ 25401 and 25501

### Against All Defendants

74. Ms. Marshall incorporates by reference paragraphs 1 through 73 as though set forth fully herein.

75. California Corporations Code § 25401 ("§ 25401") makes it unlawful

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

for any person to offer or sell a security in this state or to buy or offer to buy a security by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

76. Defendants, and each of them, made untrue statements, directly and indirectly, to induce Ms. Marshall to purchase notes and other securities, including the following:

➤ That these investments were suitable, safe, and conservative investments appropriate for Ms. Marshall;

➤ That Marquee was a safe investment and a company that was doing very well, when in fact Marquee was an unestablished, privately held company seeking to raise revenue for its business;

➤ That the investment with Infinity was a good investment in a company that was doing very well when in fact it was a privately held company with no market for its securities, and its business was making extremely risky loans to unqualified individuals.

➤ That PGA, Javellana, and Ro had a history of making unsuitable investments and/or representations to clients and had a public record detailing FINRA disputes showing losses for clients as a result of conduct remarkably similar to the "investment" recommendations made to Ms. Marshall. (See Exhibit C).

➤ Infinity sold securities and made a note with Ms. Marshall under false pretenses, including a written agreement that said note would be paid back in two years despite having advised PGA that it may not actually be able to pay back the note because of its cash flow issues.

➤ Longano and Marquee sold securities to Ms. Marshall in the form of a note or notes, warrants, and shares in the amount of $130,000.00,

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

omitting the material fact that, among other things, it was an unestablished, first-of-its-kind business, without a tried and tested source of revenue, that the securities were illiquid as there was no market for them.

77. Defendants all knew their statements and material omissions were false and misleading under the circumstances which they were made. Defendants intended to mislead Ms. Marshall so that she would purchase the securities, notes, and investments based upon this false information.

78. Defendants, and each of them, are liable under Corporations Code § 25504 for willfully participating in acts or transactions in violation of Corporations Code § 25400 and for knowingly providing substantial assistance in violation of Corporations Code § 25400 and 25403.

79. Defendants are liable to Ms. Marshall for damages sustained as a result of such violations.

## COUNT IV

### Actual Fraud/Deceit Pursuant to California Civil Code § 1572

### Against PGA, Javellana, and Ro

80. Ms. Marshall incorporates by reference paragraphs 1 through 79 as though set forth fully herein.

81. Defendants made express misrepresentations, including the following:
  ➢ That they would make suitable, safe, and conservative investments for Ms. Marshall;
  ➢ That they strive to "intimately understand their [clients'] particular situation … review liquidity requirements, cash flow needs, contingent liabilities and current asset allocation ... perform an extensive analysis of a client's financial circumstance, income requirements, risk tolerance, return expectations and long-term objectives and then develop a customized asset allocation and specified approach to

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

execute the strategy...;"

➤ That the Marquee investment was a safe investment that was doing very well;

➤ That the Infinity investment was a good investment that was doing very well.

82. Defendants PGA, Javellana, and Ro also failed to disclose material facts, made material omissions, and intentionally concealed the following:

➤ That Marquee was an unestablished, first-of-its-kind business, without a tried and tested source of revenue;

➤ That Infinity was in the business of making extremely risky loans to unqualified individuals;

➤ That both Marquee and Infinity were private companies and that any investment in them would be illiquid;

➤ That neither Marquee or Infinity had a proven track record;

➤ That Javellana and Ro had not conducted sufficient due diligence or research on either Marquee of Infinity;

➤ That Infinity was unlikely to timely pay back the note;

➤ That the investments in Marquee and Infinity were totally improper for a naïve retiree who needed safe, secure investments that offered maximum protection for the principal.

➤ That Javellana and Ro had, in the past, been involved in FINRA related disputes because they lost significant sums of client money due to unsuitable investments and/or misrepresentations. (See Exhibit B and C).

83. Defendants PGA, Javellana, and Ro engaged in the following deceitful conduct:

➤ That Javellana and Ro insisted on meeting with Ms. Marshall in restaurants and would not allow her to come to their offices;

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

➢ They failed to communicate with Ms. Marshall and failed to keep her informed about the actual state of and value of her "investements;"

➢ They provided false and misleading Portfolio Review documents;

➢ They failed to inform Ms. Marshall that Marquee had ceased doing business and that they could not contact its principals;

➢ They refused to provide timely information to Ms. Marshall when she questioned them about the status of the investments;

➢ They abandoned Ms. Marshall when it became clear that instead of safely investing her money, they had lost all of her money, and told their client to try to find her money herself.

84. Defendants made these statements and omissions and acted with deceit knowing they were false and misleading and that there was no basis for the representations they made.

85. Defendants intended to induce Ms. Marshall's reliance in order to allow them to control her money and investments.

86. Ms. Marshall justifiably relied on Defendants and had no reason to question their advice and statements. It was reasonable for Ms. Marshall to expect that Defendants would care for her money and investments based on the various representations described herein, which were made to gain Ms. Marshall's trust and confidence.

87. As a direct and proximate result of the aforesaid fraud, mismanagement, and flagrant disregard for Ms. Marshall's financial well being, Ms. Marshall has been damaged in an amount exceeding $400,000.00.

88. In doing the things herein alleged, Defendants acted fraudulently and intentionally pursuant to California Civil Code § 1572. As such, Defendants are therefore guilty of fraud. Defendants acted with fraud and malice in their dealings with Ms. Marshall, and thus, Ms. Marshall is entitled to recover an award for exemplary and/or punitive damages under *California Civil Code* § 3294.

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

## COUNT V

### Breach of Fiduciary Duty

### Against PGA, Javellana, and Ro

89. Ms. Marshall incorporates by reference paragraphs 1 through 88 as though set forth fully herein.

90. PGA, Javellana, and Ro, owed fiduciary duties to Ms. Marshall as they were her investment advisers and money managers. Defendants PGA, Javellana, and Ro, held themselves out as being superior advisors who would protect their client's principal, who understood her goals and needs, and would care for and protect Ms. Marshall's assets.

91. Ms. Marshall entrusted her assets to PGA, Javellana, and Ro and expected that they would properly manage her assets, be honest with her, and comply with their duties and applicable standards of care required of fiduciaries.

92. Ms. Marshall reasonably and foreseeably relied on such representations.

93. Defendants PGA, Javellana, and Ro owed fiduciary duties to Ms. Marshall with respect to the handling and management of her assets, including to:

> Fully and accurately disclose all material facts and information and to use reasonable care to avoid misleading Ms. Marshall;

> To be honest and act in good faith;

> To manage the investments for Ms. Marshall in a way that was in her best interest;

> To make recommendations and investments that were in line with the goals, investment objections, and tolerable degree of risk for Ms. Marshall;

> To oversee the investments of Ms. Marshall's assets and to assure they were appropriate

94. Defendants PGA, Javellana, and Ro breached their fiduciary duties to

22

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

Ms. Marshall as follows:

> By failing to act with reasonable care in investing Ms. Marshall's assets in an appropriate way;
> By failing to accurately disclose the true nature of the investments they placed Ms. Marshall's monies in;
> By recommending investments that were in their best interest instead of investments that were appropriate for Ms. Marshall;
> By lying to and misleading Ms. Marshall about the value of her investments;
> By taking improperly high fees for services which were either not rendered or were so inadequate and below the standard of care that no fee should have been taken;
> By abandoning Ms. Marshall when Defendants realized they had lost Ms. Marshall's investments, and directing her to try to recover her monies herself.

95. As a result of these breaches, Ms. Marshall has suffered substantial losses and has paid excessive fees for wholly unsuitable and improperly managed investments.

96. Defendants PGA, Javellana, and Ro acted in conscious disregard for the rights and interests of Ms. Marshall, in that said Defendants acted with full knowledge that their conduct would cause Ms. Marshall irreparable injury. Their conduct was malicious, oppressive, and fraudulent. Ms. Marshall is entitled to recover punitive or exemplary damages in an amount according to proof.

### COUNT VI

**Professional Negligence**

**Against Defendants PGA, Javellana, and Ro**

97. Ms. Marshall incorporates by reference paragraphs 1 through 96 as though set forth fully herein.

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

23

98. Defendants PGA, Javellana, and Ro agreed to, and did, act as Ms. Marshall's investment advisers beginning in September 2011.

99. As Ms. Marshall's investment advisers, they owed Ms. Marshall duties of professional care that required that they use such skill, care, and diligence as other investment advisers commonly possess and exercise on behalf of their clients under similar circumstances and in similar communities.

100. Defendants breached their duty to exercise the degree of prudence, caution, and good business practice that would be expected of any reasonable investment professional.

101. PGA, Javellana, and Ro negligently, carelessly, and recklessly invested Ms. Marshall's money, failed to professionally and competently evaluate, protect, manage, and invest in suitable investments, made material misrepresentations to Ms. Marshall, and omitted material facts when discussing investments with her.

102. As a direct and proximate result of the aforesaid gross negligence, mismanagement, and professional negligence, Ms. Marshall has been damaged in an amount exceeding $400,000.

**COUNT VII**

**Negligent Misrepresentation**

**Against PGA, Javellana, and Ro**

103. Ms. Marshall incorporates by reference paragraphs 1 through 102 as though set forth fully herein.

104. Ms. Marshall is informed, believes, and thereon alleges that at the time Defendants made the false representations described above, including, but not limited to those relating to Defendants' competence, skill, and agreement to make safe and conservative investments, said representations were false and Defendants knew them to be false or were made without any reasonable basis to believe they were true.

105. Defendants PGA, Javellana, and Ro owed a duty of care to Ms.

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

Marshall by virtue of their positions and their agreement to act for and manage Marshall's assets.

106. Ms. Marshall trusted Defendants and reasonably relied on their representations to her financial detriment.

## COUNT VIII

### Violation of Business and Professions Code § 17200

### Against All Defendants

107. Ms. Marshall incorporates by reference paragraphs 1 through 106 as though set forth fully herein.

108. Defendants' business practices, as alleged herein, constituted a continuous and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts and practices in violation of the foregoing statute, including the following:

➢ Fraudulent statements, material omissions, and deceitful conduct designed to obtain control over Ms. Marshall's life savings;

➢ Violations of the securities laws set forth above which are unlawful;

➢ Engaging in business practices that are unfair and designed to induce investors, including Ms. Marshall, to purchase and retain certain notes and other securities based on false representations and promises in the notes and materials;

109. Defendants have caused significant harm, costs, and damages to Ms. Marshall.

110. Ms. Marshall is entitled to full relief, including restitution of and/or disgorgement of all revenues, earning, profits, compensation, and benefits that Defendants have received as a result of such business practices, acts, or practices.

///

///

///

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

**Breach of Contract**

**Against All Defendants**

111. Ms. Marshall incorporates by reference paragraphs 1 through 111 as though set forth fully herein.

**I.      Contract with PGA, Javellana, and Ro**

112. Ms. Marshall is informed, believes, and thereon alleges that she entered into a professional services agreement with PGA, Javellana, and Ro, and the agreement required said Defendants to follow and abide by the securities regulations, rules, and policies of the SEC and the State of California and to act within the applicable standard of care for advisors.

113. Ms. Marshall has performed under the agreement with said Defendants.

114. PGA, Javellana, and Ro breached the agreements by the fraudulent and deceptive acts detailed herein, which contravene federal and state securities regulations, the policies of the SEC and the State of California, and the fiduciary duties owed to Ms. Marshall.

115. Ms. Marshall has been damaged in an amount in excess of $400,000.00 as a result of PGA, Javellana's, and Ro's breach of the agreement.

**II.     Promissory Note Between Infinity and Ms. Marshall**

116. Ms. Marshall received a promissory note from Infinity.

117. The note required Infinity to pay Ms. Marshall $270,000.00 together with interest at a rate of 12% per annum. The note became due and payable on August 7, 2015.

118. The note also contains an attorney's fees/costs provision.

119. Ms. Marshall has performed all the obligations she was required to perform under the note.

120. Infinity ceased paying monthly interest and has failed to return $270,000.00 to Ms. Marshall despite demand for payment of same.

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

121. Ms. Marshall has been damaged as a result of Infinity's and Greenberg's breach in the amount exceeding $270,000.00.

**III.** **Promissory Note Between Longano/Marquee, and Ms. Marshall**

122. Ms. Marshall is informed, believes, and thereon alleges that a promissory note exists between Ms. Marshall, Marquee, and Longano, but is not currently in possession of said promissory note as PGA did not provide it to her.

123. The note required Marquee to pay back the initial sum borrowed together with interest at a specified rate not later than a certain date.

124. Ms. Marshall has performed all the obligations she was required to perform under the note.

125. Ms. Marshall was informed that her "investment" in Marquee and her note were of no value because Marquee has ceased doing business and Longano can not be located.

126. Ms. Marshall is informed, believes, and thereon alleges that Marquee and Longano have breached the terms of the note by failing to re-pay Ms. Marshall's investment.

127. Ms. Marshall has been damaged as a result of Marquee and Longano's default in an amount in excess of $130,000.00.

### COUNT X

**Breach of the Covenant of Good Faith and Fair Dealing**

**Against All Defendants**

128. Ms. Marshall incorporates by reference paragraphs 1 through 128 as though set forth fully herein.

129. Inherent in every contract, including the professional service agreement and promissory notes, is an implied covenant of good faith and fair dealing that imposed on Defendants the duty to refrain from doing anything which would render the contract impossible, void, or harmed in any way.

130. Defendants, and each of them, materially breached the implied

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

covenant of good faith and fair dealing in each of their respective contracts.

131. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Ms. Marshall has been deprived of the anticipated benefit of her agreements. Ms. Marshall is entitled to compensatory and consequential damages under those agreements in an amount to be proven at trial.

## COUNT XI

### Financial Elder Abuse

### Against All Defendants

132. Ms. Marshall incorporates by reference paragraphs 1 through 131 as though set forth fully herein.

133. Defendants, and each of them, took, secreted, appropriated, manipulated, and exerted undue influence over Ms. Marshall in order to obtain and retain Ms. Marshall's life savings, within the meaning of Welfare and Institutions Code Section 15610.30.

134. Defendants' conduct evidences their intent to defraud Ms. Marshall within the meaning of California Welfare and Institutions Code Section 15610.30.

135. As a direct and proximate result of Defendants' conduct, Ms. Marshall has been deprived of her property, namely her money, and has sustained related damages for fees and costs.

136. In addition to all statutory and other remedies, Ms. Marshall is entitled to recover attorney's fees and costs for financial abuse pursuant to Welfare and Institutions Code Section 15657.5

137. Defendants' conduct and actions toward Ms. Marshall were the result of undue influence over an elder and fraud as Defendants represented they had Ms. Marshall's best interest in mind, were making appropriate investments for a woman at her age and in her life situation, and would honor written notes and agreements. The actions were done with malice, recklessness, and oppression of an elder in the commission of financial abuse, and thus, Ms. Marshall is also entitled to recover

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

punitive damages pursuant to Welfare and Institutions Code Section 15657.5 and Civil Code Section 3294.

138. Defendants used their authority, "expertise," and position of power with Ms. Marshall to assert undue influence over her in connection with their "investment" strategies and decisions. Being aware of Ms. Marshall's unsophistication and vulnerability given her age and life situation, Defendants took advantage of Ms. Marshall in order to defraud her out of her life savings and charge exorbitant fees. Defendants also failed to honor and payback contracts and agreements entered into with Ms. Marshall. The payment terms of the notes and agreements entered into false, misleading, and Defendants had no intention of complying with their terms.

139. All agreements between Defendants and Ms. Marshall are subject to rescission as they were made in violation of the prohibition against financial elder abuse, and any such agreements were obtained by fraud and undue influence of an elder.

## IV. Demand for Jury Trial

140. Ms. Marshall hereby demands a trial by jury on all issues as provided in *Federal* Rule *of Civil Procedure* Rule 38(b).

## V. Prayer for Relief

WHEREFORE, Ms. Marshall prays for relief as follows:

1. Compensatory Damages in an amount to be proven at trial, against all Defendants.

2. Restitution of monies misappropriated by all Defendants.

3. Rescission of all agreements between Ms. Marshall and Defendants.

4. Disgorgement of fees and any other ill-gotten gains in an amount to be proven at trial.

5. Punitive and exemplary damages against Defendants for COUNTS I, III, IV, V, XI according to proof.

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

6. An award of all costs and attorney fees as allowed by law and per contract.

7. Interest to the extent available.

8. Such other relief as may be just and proper.

DATED: January 28, 2016       R2 LAW GROUP, LLP

By: _____
ROBIN MCCONNELL, ESQ.
Attorneys for Plaintiff
Julie Marshall, an individual.

COMPLAINT OF PLAINTIFF, JULIE MARSHALL, FOR FEDERAL AND STATE
SECURITIES VIOLATIONS AND OTHER STATE CAUSES OF ACTION

R2 LAW GROUP, LLP
23901 Calabasas Road, Suite 2006
Calabasas, CA 91302
Telephone: 818.610.3222